# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| LUIS LONGHI, | : | Civil Case No.:  1:18-cv-08077 |
|  | : | Hon. Vernon S. Broderick |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| LOMBARD RISK SYSTEMS, INC., A | : |  |
| VERMEG LTD COMPANY, | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : |  |
|  | : |  |
|  | : |  |

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S LOMBARD RISK SYSTEMS, INC.'S MOTION TO DISMISS THE FIRST COUNT OF PLAINTIFF'S FIRST AMENDED COMPLAINT AND CROSS MOTION TO FILE AND SERVE A SECOND AMENDED COMPLAINT**

---

**GREEN SAVITS, LLC**
25B Vreeland Road
Suite 207
Florham Park, New Jersey 07932
(973) 695-7777
*Attorneys for Plaintiff*

Jon W. Green, Esq. (jgreen@greensavits.com)
Laura M. LoGiudice (llogiudice@greensavits.com)
  *Of Counsel and On the Brief*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................... iii

PRELIMINARY STATEMENT ............................................................................... 1

PROCEDURAL BACKGROUND ............................................................................ 3

LEGAL STANDARD ON MOTION TO DISMISS ................................................. 3

STATEMENT OF FACTS ....................................................................................... 4

   A.  Plaintiff's 4th Quarter Bonus Claim ............................................................. 4

   B.  Plaintiff's Fiscal Year 2019 1st Quarter Bonus Claim .................................. 5

   C.  Plaintiff's Severance Claim .......................................................................... 5

LEGAL ARGUMENT

POINT ONE

PLAINTIFF'S BREACH OF CONTRACT CLAIM IN THE FIRST COUNT OF
PLAINTIFF'S AMENDED COMPLAINT IS BOTH LEGALLY COGNIZABLE AND
FACTUALLY VIABLE ........................................................................................... 6

   A.  The Fourth Quarter Bonus claim ................................................................. 7

      1.  Defendants' Contention That Payment And Calculation of the OTE Bonus Is
      Discretionary Is Irrelevant Because Plaintiff Met Defendant's Issued Sales Goal and
      Defendant's CEO Had The Authority To State That Goal And That Plaintiff Should Be
      Paid 25% Of His OTE Bonus. ....................................................................... 8

      2.  Defendant's Contention That The Bonus Is Annual And Thus Is Not Enforceable
      Lacks Merit ..................................................................................................... 9

      3.  Defendant's Contention That The Statement's Terms Contradict The Longhi/Brown
      Emails Precludes Recovery Lacks Merit ....................................................... 10

   B.  The Severance Claim Is Legally Cognizable And Factually Viable. ................. 13

POINT TWO

PLAINTIFF HAS A VIABLE CAUSE OF ACTION FOR BREACH OF THE COVENANT OF
GOOD FAITH AND FAIR DEALING ON HIS 1ST QUARTER BONUS CLAIM AND THE
COURT SHOULD GRANT PLAINTIFF'S MOTION TO AMEND HIS COMPLAINT ......... 14

CONCLUSION ........................................................................................................ 16

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*67 Wall Street Co., v. Franklin National Bank,* 31 *N.Y.2d* 245 (N.Y. 1975)............................ 7, 14

*Block v. First Blood Associates,* 988 *F.2d* 344 (2d Cir. 1993) .................................... 13

*Breed v. Ins. Co., of N. Am.,* 46 *N.Y.2d* 351 (N.Y. 1978) ................................ 7

*Cochran v. Taylor,* 273 *N.Y.* 172 (N.Y. 1937)................................................ 9

*DeLuca v. DeLuca,* 300 *AD2d* 342, 751 *N.Y.S.2d* 766 (App. Div. 2002)....................................... 7

*Diesel v. Town of Lewisboro,* 232 *F.3d* 92 (2d Cir. 2000) ........................................ 3

*Heller v. Pope,* 250 *N.Y.* 132 (N.Y. 1928) ...................................................... 9

*Knipe v. Skinner,* 999 *F.2d* 708 (2d Cir.1993)................................................ 3

*Marine Midland Bank-Southern v. Thurlow*, 53 *N.Y.2d* 381 (N.Y. 1981)................................... 11

*Minskoff v. American Express Travel Related Services Co.,* 98 *F.3d* 703 (2d Cir. 1996)............ 12

*Owners Corp. v. Jennifer Realty Co.,* 98 *N.Y.2d* 144 (N.Y. 2002)................................ 15

*Patel v. Contemporary Classics of Beverly Hills,* 259 *F.3d* 123 (2d Cir. 2001) ..................... 3, 11

*Shepherd v. Beerman,* 18 *F.3d* 147 (2d Cir. 1994). ........................................................ 3

*Terwilliger v. Terwilliger,* 206 *F.3d* 240 (2d Cir. 2000).......................................... 7, 14

*Veromille v. JPI Partners, LLC,* 706 F. Supp. 2d 442 (S.D.N.Y. 2010) ................................. 7, 10

*Wallace Steel Inc., v. Ingersoll-Rand Co.,* 739 *F.2d* 112 (2d Cir. 1984)...................................... 11

*Zakrzewski v. Luxoft USA, Inc.,* 151 AD 3d 573, 58 N.Y.S.3d 310(App. Div. 1st Dept. 2017)………………………………………………………………………………….....15, 16

**Rules**

F.R.C.P. 12(b)(6) ................................................................................................................ 12

F.R.C.P. 15(a)(2) ........................................................................................................... 12, 14

F.R.C.P. 15(b)(1) ............................................................................................................... 12

F.R.C.P. 16(c) ............................................................................................................... 13, 16

<u>**PRELIMINARY STATEMENT**</u>

Plaintiff, Luis Longhi, submits this memorandum of law in opposition to Defendant's Lombard Risk Systems, Inc.'s F.R.C.P. 12 (b) (6) motion to dismiss the First Count of Plaintiff's First Amended Complaint.   The motion lacks merit and should be denied. Plaintiff will not oppose dismissal of the Second and Third Counts. However, Plaintiff cross-moves to file a Second Amended Complaint to include a count alleging breach of the covenant of good faith and fair dealing with regard to Plaintiff's claim of not being paid a bonus for the 1st quarter of Fiscal Year 2019.  See, **Green Declaration, Ex. 1.**[1]

First, Defendant's argument that Plaintiff's breach of contract claim fails because the terms of Plaintiff's Statement of Particulars of Employment ("Statement") are unambiguous and contradict the allegations of the Amended Complaint is dead wrong. As to the 4th quarter bonus issue, no monetary goals were set in the contract but were to be "issued to you by the Company…". See, **Kennedy Decl., Ex. 1, Statement, ¶ 3.2.**  Specific monetary goals were "issued" per email agreement between Plaintiff and Lombard's CEO; thereafter, Lombard's CEO confirmed via email on March 9, 2018 that Plaintiff met his monetary objective and should be paid 25% of the annual OTE bonus.  **Doc. 9, Compl. ¶¶ 16-18.** Although the bonus was based annually, the 4th fiscal quarter bonus obviously came at fiscal year's end and Plaintiff should have been paid that bonus.

As for his severance claim, Plaintiff was to be paid three months' severance if he worked more than six months.  The Statement did not define what constitutes a "month"---but did define a "work day" or "work week", see **Statement, ¶¶ 4.1 and 4.2**----and this ambiguity, which

---

[1]    In Plaintiff's proposed Second Amended Complaint, the breach of contract claim is in the First Count, the proposed breach of the covenant of good faith and fair dealing claim is in the Second Count, and the age discrimination claim which was the Fourth Count in the First Amended Complaint is  the Third Count in the proposed Second Amended Complaint.

should be construed against Defendant as the Statement drafter creates four reasonable but different interpretations that Plaintiff's employment was not terminated "*during* the first six months of [his] employment" (**Statement ¶ 11.2**)(emphasis supplied): 1) he was fired on a Sunday two days *after* he worked a full 26 weeks, i.e., one half year or six months; or 2) under the contract, he was paid six monthly salary payments on each month's last working day (**Statement, ¶ 3.1),** and was terminated 3 days later; or 3) he worked part or whole of seven months, i.e., December 2017, January, February, March, April, May and June 1, 2018 and was fired on June 3, 2018; or 4) he worked all work days for six full calendar months. He worked all but one working day in December 2017, i.e., December 1, which was made up when he worked on June 1, 2018 and fired two days later. Accordingly, Plaintiff should have been paid three months' severance under ¶11.2 of the Statement.

Second, as to Plaintiff's 2019 fiscal year 1st quarter bonus claim, Plaintiff will not oppose Defendant's motion to dismiss the Second and Third Count of Plaintiff's Amended Complaint. However,  Plaintiff does cross-move to file a Second Amended Complaint to include a Count alleging that Defendant breached the covenant of good faith and fair dealing.  The New York Appellate Division, First Department in June 2017 recognized that a breach of the covenant of good faith and fair dealing is cognizable as a separate cause of action based on facts strikingly similar to the facts here, namely that Defendant never issued sales goals in the 1st quarter of fiscal year 2019 thus depriving Plaintiff the opportunity to earn his bargained for $300,000 OTE bonus.

For these reasons, which will be more fully explained below, Defendants' motion to dismiss  the First Count of Plaintiff's Amended Complaint should be denied. Plaintiff does not oppose dismissal of the Second and Third Counts but his Cross-Motion to file a Second

Amended Complaint to add a new count should be granted because it states a viable cause of action, Defendant will incur no prejudice and it serves the interests of justice.

## PROCEDURAL BACKGROUND

Plaintiff concurs with Defendant's recitation.

## LEGAL STANDARD ON MOTION TO DISMISS

On a motion dismiss a complaint in part or whole pursuant to F.R.C.P. 12 (b) (6),  this Court "must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" See, *Patel v. Contemporary Classics of Beverly Hills,* 259 *F.3d* 123,126 (2d Cir. 2001).  This Court should not dismiss the First Count of Plaintiff's Amended Complaint unless it is satisfied that these claims cannot state any set of facts that would entitle Plaintiff to relief. *Id. citing to Shepherd v. Beerman,* 18 *F.3d* 147, 150 (2d Cir. 1994).

On page four of its Memorandum of Law, Defendant contends without any further explanation or factual support that Plaintiff avoided, misquoted and/or mischaracterized the language of the contract.  Because Defendant made this inflammatory statement without any further explanation or factual support, the Court should disregard this contention and, furthermore, not consider any further argument on this contention in Defendant's reply memorandum, if so filed and argued, if no opportunity is given Plaintiff to address this unsupported accusation.  See, e.g., *Knipe v. Skinner,* 999 *F.2d* 708, 711 (2d Cir.1993) (stating that "[a]rguments may not be made for the first time in a reply brief").  Moreover, like the concept that an argument raised solely in a moving brief's footnote was not properly raised, that should be applied here since Defendant asserted a mere conclusory and unsupported allegation. See, *Diesel v. Town of Lewisboro,* 232 *F.3d* 92, 110 (2d Cir. 2000).

## STATEMENT OF FACTS

The following facts are taken from Plaintiff's Amended Complaint found in **Doc. 9** filed with this Court.

Defendant Lombard is a corporation owned by the Vermeg Company and is in the business of providing regulatory reporting and collateral management solutions to the financial services industry.   Plaintiff Luis Longhi commenced employment with Lombard on December 4, 2017 pursuant to an employment agreement titled "Statements of Particulars of Employment" ("Statement") executed on November 28, 2017.   He was hired by Lombard's then CEO Alastair Brown and employed as Executive Vice-President Sales-Americas.   See, **Am. Compl. ¶¶'s 4-6.**

### A.      Plaintiff's 4th Quarter Bonus Claim

The Statement provided that Plaintiff receive a yearly base salary of $300,000.   **Id. at ¶ 12;** see also **Statement at 3.1.**  Plaintiff was to receive additional compensation in the amount of an On Target Earnings ("OTE") bonus set by Lombard at $300,000.   The relevant provision of the Statement reads, "Your annual on target bonus will be set at US $300,000 providing On Target Earnings (OTE) at $600,000 per annum. Please note that the basis on which your bonus is calculated may vary at the discretion of the Company and in accordance with the goals and objectives issued to you by the Company from time to time."  **Id. at ¶¶'s 12-13;** see also **Statement at 3.2.** The Statement itself did not specify his goals and objectives when he commenced employment.

Lombard's CEO was authorized under its corporate by-laws to set sales targets and acknowledged that Plaintiff's performance exceeded the issued target of £1.561 by March 31, 2018 and that Plaintiff was entitled to 25% of his OTE bonus. **Am. Compl., ¶ 16**.  On March 9, 2018, Plaintiff emailed Lombard's CEO, Alastair Brown with the subject line titled "FY18 Q4 Bonus" asking "Do we need to memorialize our agreement in an email to anyone?"  Brown responded that same day in an email stating that "You are going to deliver more than your

scrubbed forecast (£1.561k) and I am going to find 25% of your expected annual OTE ($75K).  I am probably going to dress part of that up as a retention incentive for Vermeg's sake." **Id., ¶ 17.** Ultimately, Plaintiff achieved sales of £1.6million by the end of 4[th] quarter of FY2018. **Id., ¶ 18.**

On April 10, 2018, Plaintiff emailed Nigel Rohan inquiring what action was being taken to pay his 2018 4th quarter bonus of $75,000 as agreed to by CEO Brown on March 9, 2018. Mr. Rohan responded on April 16, 2018 that the bonus "was under discussion with Alastair presently. Be mindful that the RSD commission/bonus is paid out in the May payroll. Plaintiff was paid under $16,000 for his fiscal year 4[th] quarter sales and not 25% of his annual bonus. **Id., ¶¶ 19-20.**

## B.    Plaintiff's Fiscal Year 2019 1st Quarter Bonus Claim.

Plaintiff continued on pace with his 4th quarter sales into the 1st quarter of FY' 2019 when he was fired.  He was only paid $10,000 in accordance with a commission schedule that was not applicable to his employment agreement.   Plaintiff was never informed that Lombard had changed Par. 3.2 of his employment agreement that would pay him based on a commission schedule.  **Id., ¶¶ 21-23.**  Most importantly, he was never given sales goals so that he could meet his OTE bonus target.

## C.    Plaintiff's Severance Claim

When Plaintiff was notified that he was being fired on Sunday, June 3, 2018, he had already worked 26 weeks or 6 months at Lombard as of Friday, June 1, 2018. Alternatively, Plaintiff had already worked from December 4, 2017 through June 1, 2018 in whole and/or parts of seven months, i.e. December 2017, January, February, March, April, May and June (1), 2018. Or he worked all work days for six full calendar months except for one working day in December 2017, i.e., December 1, which was made up when he worked on June 1, 2018 and

fired two days later. Pursuant to 11.2 of his employment agreement, if Plaintiff completed six months employment at Lombard and his employment was terminated after working six months, he would be entitled to three-months' notice or three months base pay or $75,000 in lieu of notice. He was only paid one month's notice or $25,000. **Id., ¶¶ 28-29.**

Nowhere in the Statement is "month" defined as opposed to the Statement defining the work week as 40 hours, Monday to Friday and the work day as 9AM to 6 PM. See, **Statement, ¶ 4.1** (work week); **¶ 4.2** (work day). Plaintiff's base salary was payable on the last working day of the month worked. See, **id., at 3.1.** Because Plaintiff commenced employment on December 4, 2017 and worked through June 1, 2018, he was paid six monthly payments, i.e., December 2017, January, February, March, April and May 2018.[2] The sixth and last monthly payment was on May 31, 2018. He was fired on Sunday, June 3, 2018, i.e., three days later. **Am. Compl., ¶ 7.**

## LEGAL ARGUMENT

### POINT ONE

### PLAINTIFF'S BREACH OF CONTRACT CLAIM IN THE FIRST COUNT OF PLAINTIFF'S AMENDED COMPLAINT IS BOTH LEGALLY COGNIZABLE AND FACTUALLY VIABLE.

Plaintiff alleges in the First Count of his Amended Complaint that Defendant Lombard breached its obligations of its contract with him by not paying the full $75,000 bonus for his sales performance in the 4th fiscal quarter and not paying him three months severance because he was fired after he worked at Lombard for more than six months. New York law governs this claim. See, **Statement, 21.0.**

---

[2]   Plaintiff acknowledges he did not plead that payment was on the month's last working day and six payments were made. However, that fact is contained in the Statement that is attached to the Defendant's counsel's Declaration. A reasonable inference may be drawn that he was paid six times for six months worked since he made no allegation in the Amended Complaint nor does he intend to that he was not paid his monthly salary six times for that time frame.

Under New York law, a "written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed." See, *Terwilliger v. Terwilliger,* 206 *F.3d* 240, 245 (2d Cir. 2000) citing *Breed v. Ins. Co., of N. Am.,* 46 *N.Y.2d* 351 (N.Y. 1978). Additionally, "the initial interpretation of a contract is a matter or law for the court to decide." See, *Veromille v. JPI Partners, LLC,* 706 F. Supp. 2d 442, 447 (S.D.N.Y. 2010)(citing other cases). If a "contract is clear and unambiguous on its face, the intent of the parties must be gleaned from within the four corners of the contract and not from extrinsic evidence." See, *id.,* quoting *DeLuca v. DeLuca,* 300 *AD2d* 342, 751 *N.Y.S.2d* 766, 769 (App. Div. 2002). However, if the relevant contractual provisions are ambiguous to the extent that would create more than one reasonable interpretation, the ambiguity would be construed against the drafter. See, *67 Wall Street Co., v. Franklin National Bank,* 31 *N.Y.2d* 245, 248-249 (N.Y. 1975).

### A.  The Fourth Quarter Bonus claim.

The Statement provides that Plaintiff would be paid a bonus if he met the "goals and objectives issued to you by the Company from time to time." **Statement, 3.2.** Defendant's CEO, as he was authorized and required under the Statement to do, issued a monetary goal, after conferring with Plaintiff, for 4th quarter sales of £1.56 million which Plaintiff met. Defendant's CEO agreed, as he was authorized to do, that Plaintiff was entitled to receive 25% of his annual OTE bonus, i.e., $75,000. See, **Am. Compl. ¶¶ 15-18.** But Plaintiff was paid only $16,000 and is thus owed $59,000. Taking these pleaded facts as true, as this Court must in this motion, Plaintiff has pled a legally cognizable and factually plausible claim.

Defendant hangs it hat on three different but meritless arguments to defeat this claim.

1. **Defendants' Contention That Payment And Calculation of the OTE Bonus Is Discretionary Is Irrelevant Because Plaintiff Met Defendant's Issued Sales Goal and Defendant's CEO Had The Authority To State That Goal And That Plaintiff Should Be Paid 25% Of His OTE Bonus.**

Defendant first contends that the Statement vests discretion with it to determine payment and the bonus amount and is therefore not obligated to pay the full 25% or $75,000. See, **Defts.' Memo at pp. 5-6.** While New York law holds that an employee is not necessarily entitled to a bonus payment if subject to the employer's discretion, here the Statement required payment of a set bonus if Plaintiff met the issued performance goals. The only discretion that Defendant had was issuing the performance goals which it was required to do in good faith. Defendant, through its authorized representative, issued a monetary sales goal, acknowledged that Plaintiff met the monetary sales goal and stated that Plaintiff was entitled to 25% of his annual OTE bonus or $75,000. See, **Am. Compl. ¶¶ 16-17.** Given these facts, Defendant's legal contention is not relevant because of subsequent events that indicate performance consistent with this particular contractual provision, i.e., ¶ 3.2 of the Statement.

There are several other analogous ways to legally evaluate that there was a binding contract for payment of the 4th quarter bonus. Although Plaintiff proposed a sales target of £1.56 million, it was Defendant's CEO who had the authority to say yes to that proposed target and which he did. Once the CEO did so, it was akin to unilateral contract offer that can be enforced once Plaintiff performed in accordance with its terms, which he did. In a unilateral contract setting, performance by the offeree in accordance with the offer creates a binding contract obligating the offeror to fulfill the obligation it agreed to perform. This concept has been recognized by New York courts for many decades, i.e., that if a unilateral offer is accepted by performance in conformity with the offer, it is turned into an enforceable bilateral contract. See,

*Cochran v. Taylor,* 273 *N.Y.* 172, 183-184 (N.Y. 1937)("When Chenault's assignee gave written notice within the time specified that he elected to buy, the condition was fulfilled and the unilateral option was thereby converted into a bilateral contract.") citing to *Heller v. Pope,* 250 *N.Y.* 132, 135-136 (N.Y. 1928).

A second alternative way to analyze that payment of the full bonus can be enforced is that the agreement was modified by the parties.  That is, i.e., CEO Brown, who had the authority to do so, agreed that Plaintiff would be paid 25% of his expected OTE bonus because the parties reached a mutual arrangement. The Statement has no clause that prohibits oral modification of its terms; and, in any event, the modification was memorialized in written emails.  Accordingly, the issuance of a sales goal, performance by Plaintiff and the email statement by CEO Brown that Plaintiff would meet (and did meet) the goal set for him and Plaintiff would be paid 25% of the OTE bonus could reasonably be construed to be an enforceable modification of the Statement.

Finally, given that there was sufficient consideration, this Court could also reasonably find that a new express and enforceable contract was entered into between the parties.

2. **Defendant's Contention That The Bonus Is Annual And Thus Is Not Enforceable Lacks Merit.**

Without citing any legal authority, Defendant next argues that since the Statement says that the bonus is an annual bonus, it should not be paid.  See **Defts.' Memo at p. 6.** This argument defies common sense. First, the Statement is silent as to when and how Plaintiff would be paid his bonus, i.e., in one lump sum payment after the fiscal year ended as opposed to intermittently over the fiscal year as goals were issued and met. Second, the Statement does not require that Plaintiff work an entire year to collect the OTE bonus whether in whole or part. The only thing that is clear in ¶ 3.2 of the Statement is that his OTE bonus would be $300,000 annually subject to the goals set by Defendant. It should be noted that Judge Karas of this Court

9

denied an employer's summary judgment motion seeking to dismiss an employee's claim that he was entitled to an employment bonus under his contract in part because "Defendant's argument that employment was required until year's end finds no textual support." See, *Vertromile, supra,* 706 *F. Supp. 2d* at 450.

Third, Plaintiff commenced his employment on December 4, 2017, which was in the third quarter of fiscal year 2018. The sales goal set by CEO Brown and met by Plaintiff was for the 4th quarter of the fiscal year thus coming to the end of the annual fiscal year. Plaintiff was informed he was to be paid after the fiscal year ended thus his annual bonus payment would obviously be pro-rated based on the goal set for him in the 4th quarter and that it only applied to one quarter out of the entire annual fiscal year. See, **Am. Compl. ¶¶ 15-19.** Again, there is nothing in the Statement that prohibited pro-rated payment of the annual OTE bonus "set" at $300,000 in ¶3.2 of the Statement. Moreover, the fact that the goal was set on a quarterly basis demonstrates the bonus was to be paid quarterly.

### 3. Defendant's Contention That The Statement's Terms Contradict The Longhi/Brown Emails Precludes Recovery Lacks Merit.

Next, Defendant contends that the emails referenced in ¶¶'s 17 and 19 of Plaintiff's Amended Complaint cannot save his claim. Defendant relies on legal arguments that are conflated and wrongly applied. Additionally, Defendant leaves out the all important ¶18 of the Amended Complaint that says Plaintiff met the sales goal issued by CEO Brown.

First, Defendant argues that the referenced emails that indicate that Plaintiff's performance in meeting the sales goal issued by CEO Brown are parol evidence that should be barred because the Statement's ¶ 3.2 is unambiguous. See, **Defts.' Memo at p. 6**. Defendant's assertion is dead wrong because the referenced emails are not parol evidence that are being introduced to help interpret 3.2 of the Statement. Instead, they were pled in order to establish

performance under ¶ 3.2 of the Statement.   The "parol evidence rule operates to exclude evidence of *all prior or contemporaneous negotiations* between the parties offered to contradict or modify the terms of their writing." See, *Marine Midland Bank-Southern v. Thurlow*, 53 *N.Y.2d* 381, 387 (N.Y. 1981)(emphasis supplied); see also, *Wallace Steel Inc., v. Ingersoll-Rand Co.,* 739 *F.2d* 112,  115 (2d Cir. 1984)("evidence of *prior or contemporaneous agreements* may not be offered to contradict, vary, or subtract from the terms of the writing.")(emphasis supplied). The referenced emails in ¶¶ 17 and 19 of the Amended Complaint were sent in March/April 2018, well after the Statement was executed on November 28, 2017, and addressed performance under the contract and not interpretation. See, **Doc. 13-1, p. 9.**  But even assuming *arguendo* the March/April 2018 emails referenced address the interpretation of the contact, because they were post formation and there was no prohibition against modifying the contract, then the Statement terms were modified and enforceable.  For this additional reason, Defendant's argument fails as a matter of law.

Defendant's second argument is that the Brown March 9, 2018 indicating that he had to "dress up" the bonus payment as an incentive payment suggested that approval was needed and therefore Defendant did not intend to pay the full 25%.  That is one interpretation.  But another reasonable interpretation is that Brown may have wanted to present the bonus payment a certain way to the company's accountants to book it in the company's financial statements as an incentive payment as opposed to allegedly seeking approval from alleged superiors.  In other words, nothing in the email states that Plaintiff's 25% OTE bonus payment was subject to downward revision or that additional approval was required---it merely addressed how it would be characterized. Again, this Court must draw all inferences in the non-moving party's favor in a 12(b)(6) motion.   See, *Patel, supra,* 259 *F. 3d* at    126. Additionally, Defendant studiously

ignores ¶ 16 of the Amended Complaint that CEO Brown was authorized to set the goal and pronounce it achieved and thus as Brown stated, entitling him to 25% of his annual OTE bonus. Furthermore, at minimum, the Amended Complaint alleged that Brown had actual authority on behalf of Lombard and at minimum had apparent authority to issue sales goals to Plaintiff and authorize payment of the bonus. Under New York law, "Apparent authority, then, is normally created through the words and conduct of the principal as they are interpreted by a third party, and cannot be established by the actions or representations of the agent."   Accordingly, determination of apparent authority is a question of fact to be determined by a fact-finder and not the Court.  See, *Minskoff v. American Express Travel Related Services Co.,* 98 *F.3d* 703, 708 (2d Cir. 1996).

One final throw-away argument that Defendant makes is that since Plaintiff pled breach of specific provisions of the Statement, he is barred from arguing that the emails created a separate contract because it was not pled.  This should be rejected for several reasons.  First, the emails are  proof of performance under the contract, as explained above, and not a separate contract.  The alternative contractual examples described above were given as analogies to what is being pled here.  But even if the above explanations are considered contracts that were not pled in the Amended Complaint, Plaintiff is allowed to amend pursuant to F.R.C.P. 15(a)(2) which should be freely given when justice so requires or even as late as trial pursuant to F.R.C.P. 15(b)(1) if there is no prejudice to Defendant.  Prejudice has been defined as to "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." See, *Block v. First Blood Associates,* 988 *F.2d*  344, 350

(2d Cir. 1993). Given that this case is in its infancy and a Rule 16(c) conference has not been scheduled as of this writing, no such prejudice is evident.

**B.      The Severance Claim Is Legally Cognizable And Factually Viable.**

Plaintiff's claim of three months severance under ¶ 11.2 of the Statement turns on the interpretation of verbiage, "during the first six (6) months of employment" because if Plaintiff was fired within that period, he only gets one month severance.  Defendant claims that since he started work on December 4, 2017 and was fired on June 3, 2018, Plaintiff was fired one day shy of  "the first six months of employment" and therefore not entitled to three months severance. See, **Defts. Memo at p. 7.**  Defendant justifies this assertion by relying on the total calendar days from December 4 to June 3, i.e., 181 days or less than a half year.   The problem with this justification is that it ignores contractual provisions that eschew reliance on calendar days: 1) the Statement does not define "month"  as opposed to "work day" and "work week"; and 2) calendar days are not mentioned as a relevant time unit in the Statement.  As stated above at pp. 1-2 and 5-6, because "month" is not defined in the Statement, there are four different ways to establish that Plaintiff worked more than six months. Additionally, Plaintiff was paid monthly on the last day of each month worked and was paid 6 times.

There is even another way to show that Plaintiff worked six months before he was fired. Plaintiff worked every work day in the six months from December 2017 through May 31, 2018 save one, i.e., December 1, 2017, but then made up that one day by working on June 1, 2018. See **Am. Comp. ¶¶'s 4** and **6.**  Put another way, had Plaintiff worked on December 1, 2017 and was fired on June 1, 2018, he would have worked six complete months----December, January, February March, April and May. By starting on December 4, 2017 and working through June 1,

2018, he worked the same number of work days had he commenced work on December 1, 2017 and worked through May 31, 2018, i.e., six months.

To get around these different but reasonable interpretations of ¶ **11.2** of the Statement, Defendant claims that "month" is an unambiguous term. This argument should be rejected for two different reasons. First, the Statement explicitly defined "work day" and "work week" but not month. Second, in view of these defined units of time, the Statement could have defined a month as all days that are considered work days in a particular month; had the Statement contained this definition, then Defendant's contention would have merit.

Again, the Court should interpret the Statement "to give effect to the intention of the parties as expressed in the unequivocal language they have employed." See, *Terwilliger, supra,* 206 *F.3d* at 245. However, if a material contractual provision is ambiguous that would create more than one reasonable interpretation and since Defendant drafted the contract and placed emphasis on work days and work weeks, "months" should be interpreted in the same way and not in terms of calendar days; in other words, against Defendant as the drafter. See, *67 Wall Street Co., supra,* 31 *N.Y.2d* at 248-249. Since the unit term "month' is ambiguous in the context of the issue of severance, for the reasons set forth above, Defendant's motion to dismiss Plaintiff's severance claim should be denied.

## POINT TWO

### PLAINTIFF HAS A VIABLE CAUSE OF ACTION FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING ON HIS 1ST QUARTER BONUS CLAIM AND THE COURT SHOULD GRANT PLAINTIFF'S MOTION TO AMEND HIS COMPLAINT                   .

Plaintiff cross-moves to amend his Amended Complaint pursuant to F.R.C.P. 15(a)(2) to include a new count alleging a cause of action for the breach of the covenant of good faith and

fair dealing. See, **Green Decl., Ex. 1, Second Count.** Plaintiff did allege this legal principle in paragraphs 34-36 of the Second Count of his Amended Complaint that when not paying a pro-rata bonus for the 1st quarter of Fiscal Year 2019, the covenant was violated.  Legal research uncovered that New York law recognizes a separate cause of action for breach of the covenant of good faith and fair dealing.  See, *Zakrzewski v. Luxoft USA, Inc.,* 151 AD 3d 573, 574, 58 N.Y.S.3d 310, 312 (App. Div. 1st Dept. 2017) citing *511 W. 232nd Owners Corp. v. Jennifer Realty Co*., 98 *N.Y.2d* 144, 153 (N.Y. 2002).

The facts in *Zakrzewski, supra,* are strikingly similar to the facts here.  The plaintiff in *Zakrzewski* was hired in January 2013 pursuant to a written offer of employment and other written employment agreements, that he would be an at will employee and that his compensation "would include an annual bonus of at least $50,000 and the opportunity to earn up to $250,000 of stock in defendant's holding company if defendant acquired plaintiff's former employer and plaintiff met performance goals to be set by defendant."  Zakrzewski was fired in July 2014.  The complaint sought three months severance pay and payment of a 2014 bonus.  Regarding the bonus claim, Zakrzewski alleged that defendant, like Lombard here in the 1st quarter (see **Am. Comp. ¶23**), failed to set goals.  The Appellate Division reversed the dismissal of the bonus claim based on the breach of the covenant of good faith and fair dealing for the following reasons:

> Based upon the language of the email, a reasonable person in plaintiff's position would be justified in understanding that defendant was obligated to set goals for plaintiff to enable him to receive the "fruits" of the offer (*see 511 W. 232nd Owners Corp.*, 98 *NY2d* at 153 [internal quotation marks omitted]). Defendant's alleged failure to set goals "ha[d] the effect of destroying or injuring [plaintiff's] right" to earn the stock (*see id.* [internal quotation marks omitted]; *see e.g. Pleiades Publ., Inc. v Springer Science + Bus. Media LLC,* 117 *AD3d 636*, 987 *NYS2d* 36 [1st Dept 2014]; *Merzon v Lefkowitz,* 289 *AD2d* 142, 735 *NYS2d* 106 [1st Dept 2001]*)*.

See, *Zakrzewski, supra,* 151 *AD3d* at 574, 58 *N.Y.S. 3d* at 312.

Like Zakrzewski, Plaintiff was not given sales goals in the 1st quarter so that he could meet his bargained for $300,000 set bonus. Thus, Plaintiff's amendment will not be futile and will serve the interests of justice. While Plaintiff acknowledges this Court's prior Order states that further amendment of his complaint was unlikely, Defendant will suffer no prejudice since discovery has not commenced nor has there been a Rule 16(c) conference convened. Accordingly, Plaintiff's Cross-Motion to Amend His Amended Complaint to include a count for breach of the covenant of good faith and fair dealing should be granted.

<u>**CONCLUSION**</u>

For the reasons set forth above, Defendant's Motion to Dismiss the First Count of Plaintiff's Amended Complaint should be denied.  Plaintiff does not oppose Defendant's Motion to dismiss the Second and Third Count of Plaintiff's Amended Complaint.  The Court should grant Plaintiff's Cross-motion to file a Second Amended Complaint to include an additional new count that alleges breach of the covenant of good faith and fair dealing with regard to Plaintiff's claim of failure to pay a bonus for the 1st quarter of fiscal year 2019.

**GREEN SAVITS, LLC**

Dated:  January 11, 2019

*s/Jon W. Green*
 **Jon W. Green, Esq.**
 **(jgreen@greensavits.com)**
 **Laura M. LoGiudice, Esq.**
 **(llogiudice@greensavits.com)**
 25B Vreeland Road, Suite 207
 Florham Park, N.J. 07932
 (973) 695-7777
 *Attorneys for Plaintiff, Luis F. Longhi*