UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                          :

LUIS LONGHI,                        :
                          :

              Plaintiff,    :

                          :

      - against -        :

                          :

LOMBARD RISK SYSTEMS, INC., A   :
VERMEG LTD COMPANY,       :
                          :

            Defendant.  :
                          :
------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __9/30/2019__

18-CV-8077 (VSB)

**OPINION & ORDER**

Appearances:

Jon W. Green
Green Savits, LLC
Florham Park, NJ
*Counsel for Plaintiff*

William K. Kennedy
Montgomery, McCracken, Walker & Rhoads, LLP
New York, NY
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

      Plaintiff Luis Longhi ("Plaintiff") brings the instant action against Defendant Lombard

Risk Systems, Inc., a Vermeg Ltd Company ("Defendant"), asserting claims of breach of

contract, unjust enrichment, quantum meruit, and age discrimination pursuant to the New York

City Human Rights Law, ("NYCHRL"), N.Y.C. Admin. Code §§ 8–107.  Before me is

Defendant's motion to dismiss Plaintiff's claims of breach of contract, unjust enrichment, and

quantum meruit, pursuant to Federal Rule of Civil Procedure 12(b)(6), and Plaintiff's cross-

motion for leave to file and serve a second amended complaint.  Because claims of unjust

enrichment and quantum meruit cannot survive when a valid contract governs the same subject

matter, Defendant's motion to dismiss those claims is GRANTED; however, Defendant's motion to dismiss Plaintiff's breach of contract claim is DENIED because the contractual language at issue is ambiguous. Because the claim Plaintiff seeks to add to his Complaint would survive a motion to dismiss, amendment would not be futile and Plaintiff's motion for leave to amend is GRANTED.

## I. Background[1]

Defendant Lombard is a corporation that provides regulatory reporting and collateral management solutions to the financial services industry. (Am. Compl. ¶ 4.) Defendant is owned by the Vermeg Company, and as of October 1, 2018, was doing business as Vermeg. (*Id.* ¶¶ 4, 9.) Defendant hired Plaintiff Longhi to be Executive Vice-President Sales-Americas pursuant to a November 28, 2017 employment agreement. (*Id.* ¶¶ 5–6; *see also* Emp. Agmt.) Plaintiff began work on December 4, 2017. (*Id.* ¶ 5.) Pursuant to the Employment Agreement, Plaintiff's base salary was $300,000 per year, "payable monthly in arrears on the last working day of the month." (Emp. Agmt. ¶ 3.1.) In addition, the Employment Agreement provided that:

> Your annual on target bonus will be set at US$ 300,000 providing On-Target Earnings (OTE) of US$ 600,000 per annum. Please note the basis on which your

---

[1] Unless otherwise noted, the following factual summary is drawn from the allegations of Plaintiff's First Amended Complaint and Jury Demand, filed December 3, 2018, (hereinafter, "Am Compl." or "Amended Complaint"). (Doc. 81.) For the purposes of this motion, I generally assume these allegations to be true, *see Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007), with the exception of Plaintiff's summaries of the employment agreement at issue here. Plaintiff does not attach this agreement to his Amended Complaint or explicitly incorporate it by reference, but does refer to it throughout the Amended Complaint. (Am Compl. ¶¶ 5, 11–13, 16, 24, 26, 27, 33.) Defendant attached the agreement, titled "Statement of Particulars of Employment" ("Employment Agreement" or "Emp. Agmt.") as Exhibit 1 to the Declaration of William Kennedy ("Kennedy Declaration") in support of Defendant's motion to dismiss, filed on December 17, 2018. (Doc. 13-1.) Plaintiff does not dispute the applicability or authenticity of the Statement supplied by Defendant, and cites to it throughout his memorandum of law in opposition. (*See, e.g.*,Pl.'s Mem. 2–3.) When a plaintiff chooses not to attach to his complaint a document integral to his complaint, like a contract, the defendant may produce that document when attacking the complaint for failure to state a claim, *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991), and the court may consider it, *see, e.g., Broder v. Cablevision Sys. Corp.,* 418 F.3d 187, 196 (2d Cir. 2005). I need not accept Plaintiff's description of the terms of the Statement, but "may look to the agreement itself." *See id.*

My references to Plaintiff's allegations should not be construed as a finding as to their veracity, and I make no such findings.

bonus is calculated may vary at the discretion of the Company and in accordance with the goals and objectives issued to you by the Company from time to time.

(Emp. Agmt. ¶ 3.2.)

Plaintiff's employment was to be "at-will." (*Id.* ¶ 11.1.) Upon giving the requisite notice, either Defendant or Plaintiff could terminate the employment relationship at any time with or without good cause. (*Id.* ¶¶ 11.1, 11.2.) "[D]uring the first six (6) months of employment," the length of required notice was one (1) month; otherwise, three (3) months' notice was required. (*Id.* ¶ 11.2.)

Defendant's fiscal year runs from April 1 of one year through March 31 of the following year, such that the fourth fiscal quarter runs from January 1 to March 31. (*Id.* ¶ 14.) During the fourth quarter of fiscal year 2018, Plaintiff presented a sales target of £1.561 million by the end of the quarter to Defendant's Chief Executive Officer ("CEO"), Alastair Brown, who agreed to it. (*Id.* ¶¶ 15–16.) On March 9, 2018, Plaintiff sent Brown an e-mail with the subject line "FY18 Q4 Bonus," asking "Do we need to memorialize our agreement in an email to anyone?" (*Id.* ¶ 17.) Brown sent an e-mail in response that said: "You are going to deliver more than your scrubbed forecast £1.561k) and I am going to find 25% of your expected annual OTE (75k). I am probably going to dress part of that up as a retention incentive for Vermeg's sake." (*Id.*) By March 31, 2018, Plaintiff had exceeded the sales target. (*Id.* ¶¶ 16, 18.)

On April 10, 2018, Plaintiff sent an e-mail to an individual named Nigel Rohan inquiring about the status of his fourth quarter 2018 bonus. (*Id.* ¶ 19.) Rohan responded that the bonus was "under discussion with Alastair presently. Be mindful that the RSD commission/bonus is paid out in the May payroll." (*Id.*)

Ultimately, Plaintiff was paid an additional $16,000 for his sales during the fourth quarter of 2018. (*Id.* ¶ 20.) He "continued on pace" with his sales during the first quarter of the 2019

fiscal year, April 1, 2019 through March 31, 2020, and was paid an additional $10,000 for those

sales "in accordance with a commission schedule that was not applicable to his employment

agreement." (*Id.* ¶ 22.) On Sunday, June 3, 2018, Plaintiff was notified that his employment

was being terminated. (*Id.* ¶¶ 7–8.) He was paid one month's pay—$25,000—in lieu of notice.

(*Id.* ¶¶ 28–29.)

Plaintiff contends that Defendant breached its contract and now owes him $149,000. (*Id.*

¶ 33.) First, he asserts he was entitled to a fourth quarter 2018 bonus of $75,000, and that by

paying him only $16,000, Defendant breached § 3.2 of the Employment Agreement. (*Id.* ¶¶ 19–

20.) Second, he asserts he was owed a first quarter 2019 bonus, calculated as a *pro rata* share of

$75,000; Defendant's payment of only $10,000 constituted a second breach of § 3.2. (*Id.* ¶¶ 21–

22.) Third, he contends that his employment was terminated after working six months, and was

owed three months' notice or three months' pay in lieu of notice. (*Id.* ¶¶ 26–28.) By giving him

one month's pay in lieu of notice, he claims, Defendant underpaid him by $50,000. (*Id.* ¶ 29.)

Plaintiff also asserts claims of quantum meruit and unjust enrichment based on

nonpayment of the first quarter 2019 bonus, and seeks leave to amend his complaint to add a

claim for breach of the implied covenant of good faith and fair dealing, based on Defendants'

failure to issue him sales goals for the first quarter of 2019.

## II.    <u>Procedural History</u>

Plaintiff commenced this action by filing his complaint on September 5, 2018, alleging

causes of action of breach of contract, unjust enrichment, and quantum meruit against Defendant.

(Doc. 1.) On November 16, 2018, Defendant filed a motion to dismiss with memorandum of law

and declaration with exhibits in support. (Doc. 7.)

On November 19, 2018, I issued an order directing Plaintiff to file an amended complaint

by December 7, 2018, or to file any opposition to Defendant's motion to dismiss by December 14, 2017. (Doc. 8.) The Order informed Plaintiff that it was "unlikely" he would "have a further opportunity to amend." (*Id.*) Plaintiff then filed the Amended Complaint on December 3, 2018, (Doc. 9), and I denied Defendants' first motion to dismiss as moot, (Doc. 10)

On December 17, 2018, Defendant filed a motion to dismiss Plaintiff's Amended Complaint, (Doc. 11), along with a memorandum of law in support, (Doc. 12), and the declaration of William Kennedy, with exhibits in support, (Doc. 13). After requesting and receiving an extension of time, Plaintiff filed a cross-motion to amend his complaint, a memorandum of law in opposition to Defendant's motion and in support of his cross-motion, on January 11, 2019, along with the declaration of Jon Green ("Green Declaration") with exhibits and an affidavit of service. (Doc. 17.) Defendant submitted its reply memorandum of law on January 18, 2019. (Doc. 18.)

### III. <u>Legal Standards</u>

#### A. *12(b)(6) Motion to Dismiss*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences

unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). However, in the context of a breach of contract claim where the contract is integral to the complaint, a court is not limited to accepting the plaintiff's characterization of the contract's terms, but "may look to the agreement itself." *Broder*, 418 F. 3d 187.

A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). And though all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

Finally, on a motion to dismiss, a court may consider a document integral to the complaint even if is not attached or formally incorporated by reference. *See, e.g., Broder,* 418 F.3d at 196. A court is not bound to accept a plaintiff's description of contractual terms as true, but instead "may look to the agreement itself." *See id.*

## B. *Rule 15 Motion for Leave to Amend*

Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading shall be granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962)). The "nonmovant bears the burden of showing prejudice, bad faith

and futility of the amendment." *Amusement Indus., Inc. v. Stern*, No. 07 Civ. 11586(LAK)(GWG), 2014 WL 4460393, at *9 (S.D.N.Y. Sept. 11, 2014) (citation omitted). Absent a showing of bad faith or undue prejudice, however, "[m]ere delay . . . does not provide a basis for the district court to deny the right to amend." *Ruotolo*, 514 F.3d at 191 (internal quotation marks omitted).

## IV.  Discussion

Defendant moves to dismiss the entirety of Plaintiff's complaint.  (Def.'s Mem. 1.)[2]  In response, Plaintiff argues that his breach of contract claims are legally cognizable and factually viable, (Pl.'s Mem. 6 – 14),[3] but states that he does not oppose dismissal of his unjust enrichment and quantum meruit claims, (*id.* at 2).  However, Plaintiff requests leave to amend his complaint to add a claim for the breach of the covenant of good faith and fair dealing, alleging that Defendant failed to provide him with sales goals for the first quarter of 2019, thereby preventing him from earning a bonus.  (*Id.* at 14–16.)

### A. *Defendant's Motion to Dismiss Plaintiff's Breach of Contract Claim*

Under New York law,[4] "the initial interpretation of a contract is a matter of law for the court to decide." *K. Bell & Assocs., Inc. v. Lloyd's Underwriters,* 97 F.3d 632, 637 (2d Cir. 1996) (internal quotation marks omitted). "Included in this initial interpretation is the threshold question of whether the terms of the contract are ambiguous." *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London,* 136 F.3d 82, 86 (2d Cir. 1998). When

---

[2] "Def.'s Mem." refers to Defendant's memorandum of law in support of its motion to dismiss, filed on December 17, 2018.  (Doc. 12.)

[3] "Pl.'s Mem." refers to Plaintiff's memorandum of law in opposition to Defendant's motion to dismiss and in support of his cross-motion for leave to amend his complaint, filed on January 11, 2019.  (Doc. 17-1.)

[4] The Statement contains a New York choice of law clause.  (Statement § 21.0.)  The parties do not dispute that New York law applies, and both cite only New York law in their briefs.  Accordingly, I apply New York law to this dispute.

interpreting an agreement, the court's "primary objective is to give effect to the intent of the parties as revealed by the language of their agreement. The words and phrases in a contract should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *Chesapeake Energy Corp. v. Bank of N. Y. Mellon T. Co., N.A.*, 773 F.3d 110, 114 (2d Cir. 2014) (internal quotation marks and citations omitted).

A contract is unambiguous if it "has a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion." *Sayers v. Rochester Tel. Corp. Supplemental Management Plan,* 7 F.3d 1091, 1095 (2d Cir. 1993). Where a contract is unambiguous, its meaning must be located within the four corners of the document. *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992).

A contract is ambiguous if its terms or the inferences drawn from those terms "could suggest more than one meaning when viewed objectively by a reasonably intelligent person" familiar with the context of the agreement and the business it concerns. *See Alexander & Alexander Servs.*, 136 F.3d at 86 (internal quotation marks omitted). If a contract is ambiguous, then relevant extrinsic evidence may eventually be used to aid in identifying the parties' intent. *Id.* at 429. But on a 12(b)(6) motion, a court "should resolve any contractual ambiguities in favor of the plaintiff." *Luitpold Pharm., Inc. v. Ed. Geistlich Söhne A.G. Für Chemische Industrie*, 784 F.3d 78, 86 (2d Cir. 2015) (internal quotation marks omitted.)

### 1. Bonus Claims

Plaintiff appears to contend that ¶ 3.2 of the Employment Agreement required Defendant to pay a set quarterly bonus, totaling $300,000 per year, if he met "issued performance goals." (*See* Pl.'s Mem. 7.) Plaintiff also points to subsequent e-mails between himself and Defendant's

CEO as the basis for two arguments in the alternative: (1) these communications created a new, enforceable contract for the quarterly bonus, or (2) that they constituted a modification of the Employment Agreement. (*Id.* at 8–9.)

Defendant argues that bonuses were discretionary under the Employment Agreement, not enforceable contractual terms, and in any event were to be annual, not quarterly. (Def.'s Mem. 4–6.) Defendants also characterize the e-mails as inadmissible extrinsic evidence of an unambiguous contract, or, in the alternative, confirmation of Defendants' interpretation of the contract. (*Id.* at 6–7).

I find that Plaintiff has stated a claim for breach of contract based on the Employment Agreement alone and need not reach his arguments in the alternative.

### a. Applicable Law

Under New York law, an employee cannot recover for an employer's failure to pay a bonus where the employer has absolute discretion over the bonus decision. *Namad v. Salomon Inc.,* 74 N.Y.2d 751, 752–53 (1989) (affirming dismissal of a claim for a bonus where "the bonus clause unambiguously vests discretion regarding the amount of bonus compensation to be awarded in defendants' management"); *Bessemer Tr. Co., N.A. v. Branin,* 618 F.3d 76, 92 (2d Cir. 2010) (applying New York law and affirming dismissal of a claim for an increased bonus where the bonus provision "reserve[d] to the Salary Committee the decision to award or not to award a bonus, and in what amount"). However, the employer's absolute discretion must be stated unambiguously in the contractual documents to justify dismissal of a bonus claim. *Ashmore v. CGI Grp. Inc.,* No. 11 Civ. 8611(LBS), 2012 WL 2148899, at *8–9 (S.D.N.Y. June 12, 2012) (declining to dismiss bonus claim where employer retained considerable discretion to determine whether to pay bonuses, but contract did not unambiguously indicate employer had

"absolute discretion") (citing *Fishoff v. Coty Inc.*, 634 F.3d 647, 653–54 (2d Cir. 2011)

("Discretion to modify or cancel an incentive will not be implied if there exists no explicit

contractual provision assigning the employer absolute discretion to pay such compensation."

(citation omitted))).  In the absence of an unambiguous statement of absolute discretion, whether

unpaid compensation constituted a discretionary bonus or nonforfeitable earned wages is a

question of fact.  *Doolittle v. Nixon Peabody LLP*, 6 N.Y.S.3d 864, 866 (2d Dep't 2015); *Kaplan*

*v. Capital Co. of Am. LLC*, 747 N.Y.S.2d 504, 505 (1st Dep't 2002).

 If in fact the bonus term was a part of the contract and there exists a reasonable basis for

calculating the amount due, the court may enforce it.  *O'Shea v. Bidcom, Inc.*, No. 01 Civ.3855

WHP, 2002 WL 1610942, at *4 (S.D.N.Y. July 22, 2002).

b. <u>Application</u>

 Here, although the language of the Employment Agreement plainly vests Defendant with

some discretion, cautioning that "the basis on which your bonus is calculated may vary at the

discretion of the company and in accordance with the goals and objectives issued to you by the

Company from time to time," it does not unambiguously and conclusively vest Defendant with

*all* discretion.  (Emp. Agmt. ¶ 3.2.)  Plaintiff plausibly reads the provision to give Defendant

discretion as to the issuance of sales goals, (Pl.'s Mem. 8); another plausible reading grants

Defendant discretion over the amount of any bonuses but not over whether to pay them in the

first place.  Retaining some discretion regarding the amount and distribution of bonuses does not,

on its own, justify dismissal of a bonus claim.  *See Lam v. Am. Express Co.*, 265 F. Supp. 2d 225,

238 (S.D.N.Y. 2003); *Culver v. Merrill Lynch & Co., Inc.,* No. 94 CIV. 8124 (LBS), 1995 WL

422203, at *3 (S.D.N.Y. July 17, 1995).  Even under a reading of the Employment Agreement

that gives Defendant discretion over the amount of any bonus, Plaintiff could still state a claim as

courts have held some bonus terms to create a contractual obligation to pay a bonus, even where employer retained some discretion, and made factual determinations as to the bonus amount owed. *See Bravia Capital Partners, Inc. v. Fike*, No. 09 Civ. 6375(JFK), 2011 WL 6081345, at *5 (S.D.N.Y. Dec. 6, 2011) (citing *Zucker v. Katz,* 708 F. Supp. 525, 533 (S.D.N.Y. 1989)).

Other aspects of the bonus provision also may reasonably be read to evidence "the parties' intent to be contractually obligated." *See O'Shea*, 2002 WL 1610942, at *4. For example, the references to "your bonus" plausibly imply that the bonus belonged to Plaintiff under the contract and that its payment was guaranteed. The phrase the bonus "*will be set* at $300,000," (Emp. Agmt. ¶ 3.2 (emphasis added)), also suggests that the bonus was fixed and not conditional, so long as the targets were met. *See, e.g.*, *Bravia Capital*, 2011 WL 6081345, at *4 (finding that the words "will be entitled to a bonus" did not vest employer with complete discretion); *O'Shea*, 2002 WL 1610942, at *4 (finding that the phrase, "Incentive Compensation is earned upon Plan Participant's attainment of goals prescribed in his/her Plan," suggested there was a contractual obligation to pay the referenced compensation). Finally, the specification of such a large dollar amount—equal to Plaintiff's base salary—and the fact that the provision is listed under "Compensation" may be plausibly read to establish that the on-target bonus was an integral part of Plaintiff's compensation package. *See, e.g. Harden v. Warner Amex Cable Commc'ns Inc.*, 642 F. Supp. 1080, 1096 (S.D.N.Y. 1986) (finding an enforceable agreement existed where it defined compensation in terms of base salary and bonus, and so "[t]he bonus was an integral part of plaintiff's compensation package.")

The language in the Employment Agreement stands in contrast to the clear language found by other courts to convey unambiguous absolute discretion over bonuses. *See, e.g. Hunter v. Deutsche Bank AG, N. Y. Branch*, 866 N.Y.S.2d 670 (1st Dep't 2008), *aff'g Hunter v Deutsche*

*Bank AG*, 2007 NY Slip Op 33668(U), 10, 2007 WL 4113676 (N.Y. Sup. Ct. 2007) (finding that bonus awards were solely and completely a matter of discretion, where handbook provided that although all employees were "eligible to receive a discretionary cash bonus," "[d]ecisions on [t]otal [c]ompensation are at the complete discretion of the [employer,]" and some employees might receive no bonus); *Apple Mortg. Corp. v. Barenblatt*, 162 F. Supp. 3d 270, 291 (S.D.N.Y. 2016) (finding that bonuses were discretionary where employees became "eligible" for bonuses if they fulfilled certain conditions and acknowledged in depositions that that their employment contracts did not impose a duty to pay bonuses); *Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 321 (S.D.N.Y. 2012) (finding a bonus discretionary where a compensation plan stated that employer could "interpret and apply the [compensation plan] as it deem[ed] appropriate" and "reserve[d] the right to modify, suspend or terminate" the sales compensation plan "at its sole and absolute discretion"); *Welland v. Citigroup, Inc.,* 00 Civ. 738(NRB), 2003 WL 22973574, at *15 (S.D.N.Y. Dec. 17, 2003) (finding that employer had "complete discretion" where bonuses were not "automatically awarded year to year and [were] determined at management's sole and exclusive discretion"); *Sathe v. Bank of N. Y.,* No. 89 CIV. 6810, 1990 WL 58862, at *3 (S.D.N.Y. May 2, 1990) (finding that employer had "discretionary power" where compensation plan provided that "[n]othing in this [p]lan shall give rise to any special compensation").

Defendant's reliance on *Vetromile v. JPI Partners, LLC*, 706 F. Supp. 2d 442 (S.D.N.Y. 2010), is unavailing and rests on a misunderstanding of that case's holding. In *Vetromile*, the contract at issue provided that "[f]or the first three years of employment a minimum of $100,000.00 bonus will be paid as approved by the [defendant] and the [plaintiff] must be employed by the [defendant]." *Id.* at 445. Defendant claims that the court "ruled that the bonus was 'discretionary,' and thus the plaintiff's entitlement to a bonus turned on whether Plaintiff

was 'employed by the [defendant]' as required by that provision." (Def.'s Mem. 5 (quoting *id.* at 449).) This is an incorrect interpretation of the holding. While the court did express its view, which in any event I do not subscribe to, that the contract's language made the bonus "discretionary," it went on to say that the defendant had "essentially abandoned" its argument that the bonus was discretionary and suggested instead that if plaintiff had been employed until the year's end, the bonus would in fact constitute earned wages. *Id.* at 449. Therefore, the Court proceeded as if the bonus was not discretionary, and considered only whether the precondition for payment of the bonus—whether plaintiff had been employed by the defendant within the meaning of the contract—had been fulfilled. *Vetromile*, 706 F. Supp. 2d at 449–50. Defendant's reading of *Vetrimile* is untenable because if the bonus had been ruled to be discretionary, that would have ended the inquiry, and whether Plaintiff was "employed by the defendant"—an issue the court specifically addressed and ruled on—would have been irrelevant.

Finally, Defendant's contention that the contract clearly provides that bonuses were to be annual, not quarterly, is not compelling. The Employment Agreement is silent as to when any bonus would be paid out, and Plaintiff alleges that he was in fact paid a bonus specifically for his fourth quarter 2019 sales, which suggests something other than an annual bonus. (Am. Compl. ¶20.)

Accordingly, "resolv[ing] any contractual ambiguities in favor of the plaintiff," I find that Plaintiff has stated a claim for breach of contract relating to underpayment of bonuses. *See Luitpold Pharm.*, 784 F.3d at 86 (internal quotation marks omitted).

### 2. Severance Claim

Plaintiff's severance claim is based on the following provision of the Employment Agreement, listed under Termination of Employment and Notice: "The length of notice to be

given by either party is three (3) months. However, during the first six (6) months of employment, the length of notice to be given by either party is only one (1) month." (Emp. Agmt. ¶ 11.2.) Defendant argues that Plaintiff's date of termination was "one day shy of six months from his start date of December 4, 2017," and so he was only entitled to one month's notice or pay in lieu of notice. (Def.'s Mem. 7.) Defendant argues that the contract is unambiguous and that "the parties clearly intended 'six months' to be measured in months." (*Id.* at 8.) Tellingly, Defendant does not ever explain how a month ought to be defined, but calculates the period from date to date, so that six months would have been up on June 4, 2017.

Plaintiff contends that because he began working on December 4, 2017, and was terminated on June 3, 2018, he had already worked six months at the time of termination and was owed three months' notice or three months' pay in lieu of notice. (Pl.'s Mem. 13–14.) Instead, he received one month's pay in lieu of notice. (*Id.* at 6.) Plaintiff urges me to find that he had completed six months of work within the meaning of the contract in one of four ways: 1) because he worked a full 26 weeks, or half a year; 2) because he was paid six monthly salary payments on each month's last working day, per the Employment Agreement; 3) because he worked part or whole of seven months; or 4) because he worked all the work days for six full calendar months. (*Id.* at 14.)

I need not make a finding with regard to Plaintiff's various alternative arguments that he completed six months of work within the meaning of the Employment Agreement. The Employment Agreement's provision is at minimum ambiguous, and certainly does not support Defendant's reading as the only possible interpretation. (*See* Emp. Agmt. ¶ 11.2.) It is also plausible that this term of the Employment Agreement intended to refer to calendar months. The fact that the Employment Agreement provides that monthly salaries were paid on the last

working day of each calendar month, (Emp. Agmt. ¶ 3.1), supports this plausible interpretation. And if Plaintiff's reading is the correct one, then Plaintiff had already completed six months of work on the day he was terminated, and would have been entitled to three months' pay in lieu of notice.

Resolving all ambiguities in Plaintiff's favor, I find he has stated a claim for underpayment of contractual severance. *See Luitpold Pharm.*, 784 F.3d at 86.

### 3. Unjust Enrichment and Quantum Meruit Claims

In his Complaint, Plaintiff pled claims of unjust enrichment and quantum meruit based on Defendant's failure to pay him a bonus for his first quarter 2010 sales. (Am. Compl. ¶¶ 34–42). In his opposition to Defendant's motion to dismiss, however, Plaintiff states that he does not object to the dismissal of these claims. (Pl. Mem. 1).

As an initial matter, under New York law, "quantum meruit and unjust enrichment are not separate causes of action." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (quoting *Seiden Assocs.*, 768 F. Supp. at 96). Rather, "unjust enrichment is a required element for an implied-in-law, or quasi contract, and quantum meruit . . . is one measure of liability for the breach of such a contract." *Id.* (quoting *Seiden Assocs.*, 768 F. Supp. at 96). The two counts may thus be "analyze[d] . . . together as a single quasi contract claim." *Id.*

It is well settled, however, that "New York law does not permit recovery in quantum meruit . . . if the parties have a valid, enforceable contract that governs the same subject matter as the quantum meruit claim. *Id.* (collecting cases). To bar a quantum meruit claim, a contract's scope must "clearly cover[] the dispute between the parties." *Id.* A party is not precluded from proceeding on both theories, where the quasi-contract governs "additional

services [rendered] upon extra-contractual representations by the other party," which must be "so distinct from the contractual duties . . . that it would be unreasonable for the defendant to assume that they were rendered without expectation of further pay." *Id.* (quoting *U.S. E. Telecommc'ns., Inc. v. U.S. W. Commcns Servs., Inc.,* 38 F.3d 1289, 1298 (2d Cir. 1994).

The parties do not dispute that a valid, enforceable contract governs the employment relationship, including whether any bonus payments are owed to Plaintiff. Indeed, Plaintiff frames Defendant's unjust enrichment as the result of Plaintiff's performance "in good faith expecting that he would be compensated as contemplated in his employment agreement." (Am. Compl. ¶ 35.)

Accordingly, Plaintiff's quantum meruit and unjust enrichment claims must be dismissed.

### B. *Plaintiff's Motion to Amend Complaint to Plead Breach of the Covenant of Good Faith and Fair Dealing*

Plaintiff also seeks to amend his complaint in order to plead a breach of the implied covenant of good faith and fair dealing, a cause of action whose applicability he "uncovered" through legal research. (Pl.'s Mem. 15.) He alleges that Defendant breached the implied covenant by failing to issue sales goals to him in the first quarter of fiscal year 2019, undermining his ability to earn his full contractual bonus. (*Id.*) Defendant argues leave should be denied because Plaintiff's amendment would be futile. (Def.'s Mem. 10–11.)

Leave to amend a pleading is to be granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). Although I indicated to Plaintiff that further opportunity to amend would be unlikely, and although the proposed amendment does not rest on information Plaintiff did not or could not have known at the time of his first amendment, I nevertheless examine his request to determine whether justice requires leave. Defendant has not alleged, and I cannot identify, any prejudice, undue delay or bad faith. *See Ruotolo*, 514 F.3d at 191. Defendant argues only that Plaintiff's

amendment would be futile; accordingly, I turn to the merits of the claim Plaintiff seeks to assert.

## 1. Applicable Law

The covenant of good faith of fair dealing, implied by all contracts governed by New York law, prevents the parties from doing "anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002) (internal quotation marks omitted). The parties' duties under the covenant encompass "any promises which a reasonable person in the position of the promisee would be justified in understanding were included" in the contract. *Id.* (citation omitted). A claim for breach of the implied covenant "may be brought, if at all, only where one party's conduct, though not breaching the terms of the contract in a technical sense, nonetheless deprived the other party of the benefit of its bargain." *Fischkoff v. Iovance Biotherapeutics, Inc.*, No. 17 Civ. 5041 (AT) (GWG), 2018 WL 4574890, at *7 (S.D.N.Y. July 5, 2018) (citation omitted). The tort requires an element of bad faith; "a defendant violates the implied covenant when it purposefully sabotages a plaintiff's ability to benefit under the contract." *Thompson v. Advanced Armament Corp., LLC*, 614 F. App'x 523, 525 (2d Cir. 2015) (summary order).

New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002); *see also Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 470 (S.D.N.Y. 2016) (dismissing breach of the implied covenant of good faith and fair dealing claim because it "relie[d] on no facts distinct from the breach of contract claims."), *aff'd*, 759 F. App'x 42 (2d Cir. 2019).

## 2. Application

Plaintiff relies on *Zakrzewski v. Luxoft*, 58 N.Y.S.3d 310 (1st Dep't 2017), to make out his cause of action, (Pl.'s Mem. 15–16). In *Zakrzewski*, the Appellate Division, First Department, held that a complaint stated a cause of action for breach of the implied covenant of good faith and fair dealing where the plaintiff alleged that he had been told in writing that he had the opportunity to earn additional restricted stock if conditions were met, including his achievement of certain goals. *Zakrzewski*, 58 N.Y.S.3d at 312. The defendant did not set any such goals. *Id.* The court found that a reasonable person in the plaintiff's position would be justified in understanding "that [the] defendant was obligated to set goals for plaintiff to enable him to receive the 'fruits' of the offer" and that the "[d]efendant's alleged failure to set goals had the effect of destroying or injuring plaintiff's right to earn the stock." *Id.* at 312 (internal quotation marks and citations omitted). Here, Plaintiff alleges that his ability to earn a bonus depended on Defendant's issuance of sales goals, even though it had no obligation to do so under the contract. (*See* Pl.'s Mem. 16.) When Defendant did not do so, Plaintiff suggests, it destroyed Plaintiff's ability to earn the extra compensation, separate and apart from Defendant's eventual decision not to pay that compensation.

The Second Circuit's analysis in *Thompson v. Advanced Armament Corp.* is instructive. 614 F. App'x 523. In *Thompson*, the Second Circuit affirmed the district court's judgment after a bench trial that the defendant-employers had breached the implied covenant by "purposefully and intentionally creat[ing] a situation in which [plaintiff] was destined to fail," and breach his employment contract, *id.* at 525 (quoting *Random Ventures, Inc. v. Advanced Armament Corp., LLC*, No. 12 Civ. 6792(KBF), 2014 WL 113745, at *48 (S.D.N.Y. Jan. 13, 2014)), by not providing the plaintiff with the appropriate resources, *Random Ventures,* 2014 WL 113745, at

*48; *see also Fischkoff*, 2018 WL 4574890, at *7 (holding that plaintiff stated a claim for breach of the implied covenant where his employment was terminated for cause under a contract, but alleged that defendant, his employer, had fabricated a record of poor performance in order to terminate him for cause, because if he had been terminated without cause he would have been entitled to a bonus). Similarly, Plaintiff has alleged that Defendant created a situation in which Plaintiff, if not quite destined to fail or to necessarily breach his contract, would nevertheless never be able to earn a bonus. This is different from Defendant's eventual choice not to pay Plaintiff, in the same way that creating a situation in which the employee is forced to breach his contract is different from the ultimate act of terminating the employee's employment based on that breach of contract. *See Thompson*, 614 F. App'x at 525; *Random Ventures,* 2014 WL 113745, at *48.

Therefore, I find that Plaintiff's allegations make it plausible that Defendant had a good faith duty to issue sales goals implied by the contract, and that Defendant did not do so in order to "deprive him of [his] [b]onus," *Fischkoff*, 2018 WL 4574890, at *7, and "purposefully sabotage[ his] ability to benefit under the contract," *Thompson*, 614 F. App'x at 525. Crediting Plaintiff's allegations, while Defendant's conduct did "not breach[] the terms of the contract in a technical sense, [it] nonetheless deprived [Plaintiff] of the benefit of [his] bargain." *Fischkoff*, 2018 WL 4574890, at *7.

Defendant argues that Plaintiff's claim is duplicative of his breach of contract claim. (Def.'s Reply 5–7.)[5] In fact, the claims rest on different conduct. Plaintiff alleges that Defendant breached the contract by failing to pay Plaintiff a bonus, but that it breached the

---

[5] "Def.'s Reply" refers to Defendant's Reply Memorandum in Support of Motion to Dismiss First Amended Complaint and in Opposition to Plaintiff's Cross Motion to File Second Amended Complaint, filed January 18, 2019. (Doc. 18.)

implied covenant of good faith and fair dealing by failing to issue sales goals in the first instance. (Prop. SAC ¶¶ 32–33, 34–38 .)[6]  These are two distinct predicate allegations and distinguishable from the situations in the cases cited by Defendant, (*see* Def.'s Mem. 5–6 (citing, *e.g. Najjar Grp., LLC v. W. 56th Hotel LLC*, No. 14-CV-7120(RA), 2017 WL 819487, at *5 (S.D.N.Y. Mar. 1, 2017) (finding breach of implied covenant where plaintiff alleged that defendant had prevented plaintiff from obtaining "return on its investment and equity" and "from receiving any fruits of the parties' agreement and venture" was duplicative of breach of contract claim based on defendant's dilution of plaintiff's interest and defendant's failure to provide requisite cash distributions (internal quotation marks omitted)); *Margel v. E.G.L. Gem Lab Ltd.*, No. 04 Civ.. 1514 (PAC)(HBP), 2010 WL 445192, at *9 (S.D.N.Y. Feb. 8, 2010) (finding breach of contract and breach of implied covenant claims were duplicative where they were both based on allegedly false monthly reports sent by defendant laboratory to plaintiff)).

Finally, in any event, the Second Circuit has clarified that although a "party certainly cannot succeed on claims for both breach of an express contract term and breach of the implied covenant based on the same facts," where the parties dispute "the meaning of the contract's express terms, there is no reason to bar a plaintiff from pursuing both types of claims in the alternative." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 206 (2d Cir. 2018).

Accordingly, Plaintiff's amendment would not be futile and his motion for leave to amend is granted.

---

[6] "Prop. SAC" refers to the proposed Second Amended Complaint and Jury Demand, filed by Plaintiff as Exhibit 1 to the Declaration of Jon W. Green, filed January 11, 2019.  (Doc. 17-2, at 4–12.)

## V.     <u>Conclusion</u>

For the foregoing reasons, Defendant's motion is GRANTED IN PART AND DENIED IN PART.  Specifically, Defendant's motion to dismiss the unjust enrichment and quantum meruit claims is GRANTED, and Defendant's motion to dismiss the breach of contract claim related to Plaintiff's bonus and his severance is DENIED.  Plaintiff's motion for leave to amend his complaint is GRANTED.  Plaintiff is directed to file his Second Amended Complaint within thirty (30) days of this Order.

The Clerk of Court is respectfully directed to terminate the open motion at Document 11.

SO ORDERED.

Dated: September 30, 2019
        New York, New York

Vernon S. Broderick
United States District Judge